UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                            Case No. 18-20075

Adam Dean Brown,
                                                 Sean F. Cox
    Defendant.                       United States District Court Judge

_____/

## **OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

In anticipation of obtaining an arrest warrant for Defendant, DEA agents set up surveillance of his apartment. When he left, one of the officers conducting surveillance stopped him for driving with a suspended license. Agents then arrested Defendant, seizing his cell phone in the process. He was taken to the Canton Police Department, where he gave agents consent to search his phone. Defendant also waived his Miranda rights and spoke with officers.

Defendant has now filed a motion to suppress, arguing that the stop and the seizure of his phone were invalid, and that he did not voluntarily waive his Miranda rights or voluntarily give agents consent to search his phone. The Court disagrees and, for the reasons below, shall deny his motion.

## **BACKGROUND**

Defendant Adam Brown is charged in the first superseding indictment with several distribution of controlled substance offenses, including distribution of a controlled substance resulting in death (Doc. # 20). In May 2018, he filed a motion to suppress (Doc. # 22). The Court held a hearing on this motion on July 18, 2018 and August 24, 2018.

At the hearing, the Government presented four witnesses–former Westland Police Officer Adam Tardif, DEA Special Agent Brandon Carrier, DEA Task Force Officer David Powell, and DEA Task Force Officer Kenneth Robinson. It also introduced several exhibits: the Westland Police Department impound policy, a vehicle impound report, a consent to search form that Defendant signed for his apartment, two waiver of Miranda rights forms that Defendant had signed in the past, three consent to search forms that Defendant had signed in the past, and two reports written by Officer Robinson.

As for Defendant, he testified on his own behalf. He also introduced several exhibits: his Canton Police Department prisoner fact sheet, his receiving/screening form from when he arrived at the police department, the consent to search form for his cell phone that he signed, the constitutional rights certification of notification form that he signed, a Canton Township Fire Department incident report, his medical records from Oakwood Healthcare Center and Dickerson Detention Facility, a United States Marshal Service prisoner custody alert notice, Officer Tardif's report, and notes written by Officer Robinson.

Now, having heard and observed the witnesses who testified at the evidentiary hearing, allowing for the Court to assess credibility, having considered the exhibits submitted by the parties, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

In the afternoon of January 26, 2018, DEA Task Force Officer Kenneth Robinson began

---

[1] To the extent that a finding of fact is more properly a conclusion of law, and to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

drafting a complaint and arrest warrant for Defendant. In the meantime, other DEA agents, including Special Agent Carrier and Task Force Officer Powell, established surveillance of Defendant's apartment while they waited for Robinson to obtain the arrest warrant.

During the surveillance, Powell contacted Westland Police Officer Adam Tardif and asked him to initiate a traffic stop if Defendant left the apartment. Tardif then checked Defendant's information in LEIN, a law enforcement database, and discovered that his license was suspended. Some time after, the surveillance team radioed Tardif, informing him that Defendant had left his apartment in a black Jeep Cherokee. Tardif then observed Defendant driving on a public roadway and initiated a traffic stop. When he did so, other DEA agents, including Officer Powell, arrived on the scene.

Tardif and Powell approached the vehicle and made contact with Defendant. Also in the vehicle was Defendant's eighteen-month-old daughter, who was sitting in a carseat in the back. Because Defendant could not provide a valid driver's license, Tardif arrested him for driving with a suspended license. He handcuffed Defendant and put him in the backseat of a police vehicle along with his daughter.

Defendant's arrest raised a pressing question: What to do with his daughter? Agents asked Defendant who could take care of the child, and he informed them that his girlfriend, the child's mother, could do so. Agent Carrier then offered to call her with his cell phone, but Defendant could not produce her number from memory. The number was, however, saved in his cell phone. So, Defendant asked agents to obtain his phone from his vehicle so that he could call his girlfriend and arrange care for his daughter.

An agent obtained the phone, which was located in the passenger compartment of the

3

Jeep. He brought it to Defendant, who opened the phone and identified his girlfriend's number. For safety purposes, Agent Carrier made the call and placed the phone on speaker. Defendant then arranged for his girlfriend to come to the location of the traffic stop to pick up their daughter. When the call ended, Carrier kept the phone. Meanwhile, at some point after agents had obtained Defendant's phone at his request, Officer Tardif conducted an inventory search of Defendant's vehicle under the Westland Police Department impound policy.

Before Defendant's girlfriend arrived, he and the agents agreed to instead wait for her at Defendant's nearby apartment. So, they used Defendant's phone to call her again, informing her of the new plan. After the call, Carrier gave the phone to Officer Powell. Carrier then asked Defendant if agents could enter the apartment and, if Defendant permitted them to enter, that agents also wished to search the residence. Defendant agreed to this proposal, consenting to allow agents to enter and search his apartment. He signed a consent form to this effect without hesitation. After he did so, agents and Defendant entered the apartment.

Their time spent in the apartment was short and uneventful, and Defendant's girlfriend soon arrived. Once she did, agents left the residence with Defendant, with Officer Tardif transporting him to the Canton Police Department. Traveling separately, Officer Powell also went to the police department, taking Defendant's phone with him. Meanwhile, Officer Robinson, who was not present during the stop, learned that Defendant was being transported to the police department, so he also left for that location.

Defendant arrived at the police department just before 6:00 p.m., roughly two-and-a-half hours after the initial traffic stop. When he arrived, a receiving/screening form was prepared. The form indicates that Defendant did not have any obvious injuries, did not appear to be under

4

the influence of alcohol or drugs, and did not show any signs of drug withdrawal. During booking, Defendant also completed an officer-prisoner questionnaire, on which he indicated that he did not have any other medical problems that officers should know about. After booking, Defendant was placed in a holding cell.

Not long after, Officers Powell and Robinson fetched Defendant from his cell and escorted him to an interview room. After introductions, and before asking any substantive questions, Robinson notified Defendant of his Miranda rights. Defendant agreed to waive his Miranda rights and speak with the officers. In doing so, he signed a form indicating that he understood his rights, that he had not been threatened or promised anything, and that he agreed to answer the officers' questions. Indeed, this was a familiar process to Defendant; he had previously waived his Miranda rights on two separate occasions within the past eight months. And here, not only did he sign a form waiving those rights, but he also never indicated that he did not want to speak to the officers or that he wished to first speak with a lawyer.

While Robinson informed Defendant of his Miranda rights, Powell prepared a consent to search form for Defendant's cell phone. To this point, neither Powell or any other agent had searched the phone. Robinson then discussed the form with Defendant and asked for his consent to search the phone. This, like the Miranda waiver, was a familiar process to Defendant; he had previously signed three separate consent to search forms seven months prior. He did so again here, certifying that he had been advised of his constitutional rights and that he consented to the search of his phone freely and voluntarily. After this, the officers interviewed Defendant for about 30 minutes, finishing around 7:00 p.m. They then returned Defendant to a holding cell.

During this entire interaction, from the initial stop through the interview, Defendant was

calm and cooperative with agents. He was alert and responsive to agents' questions, and never appeared agitated or angry. As for the agents, they never raised their voices or threatened Defendant, either during the traffic stop or during the interview. And they consistently indicated that Defendant did not appear to be under the influence of drugs or alcohol and that he did not display any symptoms of drug withdrawal. Nor did he appear to be injured; indeed, he never asked for any medical treatment or assistance.

This changed about an hour after interview. Defendant requested medical treatment, reporting that he was having trouble breathing and that he was having a panic attack. In response, officials promptly summoned Canton Township Fire Department EMS, which transported Defendant to the hospital.

At the hospital, Defendant reported having anxiety and shakes. He also had congestion stemming from a previously diagnosed sinus infection. He did not, however, report any abdominal pain, chest pain, ear pain, fatigue, fever, headaches, or nausea. And he was oriented to person, place, and time. After seeing Defendant, a doctor diagnosed him with acute opiate withdrawal and chronic sinusitis. Defendant was provided with Ativan and discharged in satisfactory condition. He was then taken to jail, where he has remained during the pendency of this case.

Now, although the parties agree on the general timeline, Defendant's verison of the above events differs significantly in several respects. He testified that the traffic stop began on a more inauspicious note; after he was pulled over, Officer Powell approached him and said, "DEA, you're fucked." This statement set the tone; for instance, Defendant says that he consented to the search of his home only after agents told him that if he did not provide it, then

they would kick in the door and tear his apartment up.

This alleged hostility continued throughout the day. Defendant testified that once he arrived at the Canton Police Department, he was going through withdrawal; he was nauseous, sweating, and weak. His sinus infection also made it difficult for him to breathe. Yet he remained in a holding cell for several hours before receiving any attention. When Powell and Robinson came to his holding cell to bring him to the interview room, Defendant told them that he needed to go to the hospital. Yet the officers rebuffed this request, telling Defendant that he could not go because they wanted to interview him.

When the interview began, before Defendant signed any consent form, Powell was already looking through the pictures on Defendant's phone and asking him about its contents. Not until the end of the interview did he give Defendant the consent to search form. And Defendant only signed this form and the Miranda waiver because he felt he had no choice–he saw it as the only way to obtain medical attention. At this point, Defendant's version mostly converges back with the Government's–he returned to his cell, requested medical attention, and was taken to the hospital.

The Court declines to credit Defendant's version of events. Having heard his testimony and viewed his demeanor, the Court does not find Defendant to be a credible witness. His testimony was fraught with inconsistencies. A few examples are illustrative. His description of his physical condition–belied by the intake forms and medical records that do not reflect the injuries or symptoms that he now says he suffered from. His testimony that he spent about two or three hours in a holding cell before the interview–contradicted by records showing that he was there only for about 40 minutes. And his testimony that he was not presented with the consent to

7

search and Miranda waiver forms until the end of the interview–again, contradicted by relevant documentation. So, the Court rejects Defendant's account and instead credits the testimony of the Government's witnesses, whose description of events was clear, coherent, and, most importantly, consistent.

## CONCLUSIONS OF LAW

Defendant raises a number of issues in his motion to suppress, challenging the: (1) initial stop; (2) the seizure of his cell phone; (3) his waiver of his Miranda rights; and (4) his written consent to search the phone. The Court shall address each argument in turn.

### I. The Initial Traffic Stop

Just as Defendant's encounter with law enforcement began with the initial traffic stop, so does his argument in favor of suppression. He argues that the stop was unlawful because it was premature–Officer Tardif stopped him under an arrest warrant that had not been issued yet. *See Brendlin v. California*, 551 U.S. 249, 251 (2007) ("When a police officer makes a traffic stop, the driver of the car is seized within the meaning of the Fourth Amendment."); *Whren v. United States*, 517 U.S. 806, 810 (1996) ("An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances."). This argument, however, is unsupported by the facts and the law.

First, the facts. Officer Tardif stopped Defendant not because there was a warrant for his arrest, but because Defendant was driving with a suspended license. Tardif had checked Defendant's information in LEIN, knew his license was suspended, and observed him driving on a public roadway. At that point, because Tardif had probable cause to believe a traffic violation occurred, he could (and did) lawfully stop Defendant's vehicle. *See Whren*, 517 U.S. at 810

8

("[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").

True, Tardif initiated his surveillance, and the stop, at the DEA's behest while they sought the arrest warrant. But, this does not mean that probable cause was wanting, or that the stop was unreasonable. Indeed, even if Tardif's primary motivation for the stop was to detain Defendant under the soon-to-be-issued arrest warrant, the stop would still be reasonable. The Fourth Amendment "permits an officer who has probable cause to believe that a traffic violation is occurring to detain [an] automobile, regardless of the officer's subjective motivation for the stop." *United States v. Burton*, 335 F.3d 514, 516 (6th Cir. 2003). Thus, Tardif's subjective motivation is irrelevant, the Fourth Amendment only requires a stop to be objectively reasonable. And it was; Tardif had probable cause to believe that Defendant was driving with a suspended license.

## II. The Seizure of the Cell Phone

Next, Defendant argues that agents unlawfully seized his cell phone. Warrantless seizures generally are unreasonable under the Fourth Amendment, unless one of the exceptions to the warrant requirement applies. *See United States v. Edwards*, 415 U.S. 800, 802 (1974). One of these exceptions is a warrantless search or seizure incident to a lawful arrest. *Id*. When agents lawfully arrest a suspect, they may search him and seize any property in his possession. *See id*. at 803. Indeed, courts have repeatedly approved warrantless seizures of cell phones incident to lawful arrests. *See United States v. Gholston*, 993 F.Supp.2d 704, 710 (E.D. Mich. 2014) (citing cases).

Here, Defendant was lawfully arrested. And when his phone was seized–after he initially

called his girlfriend–it was in his immediate possession. There is, however, an added wrinkle. When Defendant was removed from his vehicle, he left his phone behind. It only returned to his immediate possession after agents removed it from the vehicle, at his request, so that he could call his girlfriend to arrange care for their young child. Yet this atypical sequence of events does not lead the subsequent seizure outside the bounds of the Fourth Amendment.

After all, the touchstone of the Fourth Amendment is reasonableness. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). And the agents' decision to retrieve the cell phone from the car and bring it to Defendant was entirely reasonable; indeed, they did so at his request so that they could arrange care for his eighteen-month-old child. And, at a minimum, once the phone was in Defendant's immediate possession it was subject to seizure incident to a lawful arrest. *See Edwards*, 415 U.S. at 803; *see also United States v. Ricks*, 817 F.2d 692, 696 (11th Cir. 1987) ("In this case, the jacket, while not initially in Ricks's grab area, became subject to a legitimate search when the agent handed it to Ricks [at his request], thus placing it within Ricks's grab area."); *United States v. Lisbon*, 835 F.Supp.2d 1329, 1361 (N.D. Ga. 2011) (holding that when a defendant selected a pair of pants that he wanted to wear, the arresting officers lawfully searched those pants incident to the lawful arrest). Thus, the Court concludes that the seizure of Defendant's phone did not violate the Fourth Amendment.[2]

### III. The Interview

Defendant's final two arguments stem from his interview at the police department,

---

[2] Indeed, even if the phone had remained in the vehicle, it would have been lawfully seized during Tardif's inventory search, which was done under the Westland Police Department impound policy. *See United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012) ("[P]olice may conduct an inventory search of an automobile that is being impounded without running afoul of the Fourth Amendment."); *United States v. Robinson*, 390 F.3d 853, 871 (6th Cir. 2004) ("In any event, the record indicates that an inventory search would have been conducted in accordance with written police policy, so that the contents of the vehicle would be admissible under the doctrine of inevitable discovery.").

specifically his decisions to waive his Miranda rights and give consent to search his phone. Because these decisions happened in quick succession, it is no surprise that his challenges to both are similar–he argues that his decisions were involuntary and coerced. The Court disagrees.

### a. Defendant Voluntarily Waived his Miranda Rights

Consider first Defendant's waiver of his Miranda rights. Statements made during a custodial interrogation are inadmissible unless the defendant has been advised of his right against self-incrimination and has validly waived that right. *United States v. Binford*, 818 F.3d 261, 271 (6th Cir. 2016). A Miranda waiver "must be made voluntarily and free of any coercion." *Id*. This same standard applies to any subsequent statements made by the defendant. *Id*.

A court's voluntariness inquiry begins with a necessary predicate: Before a waiver may be deemed involuntary, the Court must find that there was "coercive police activity." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *Binford*, 818 F.3d at 271. If not, the inquiry is at an end–the statements were voluntary. *Bindford*, 818 F.3d at 272. If so, the waiver was involuntary only if the "coercion in question was sufficient to overbear the defendant's will," and the alleged misconduct "was the crucial motivating factor" in the defendant's decision to waive his rights. *See United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999).

Right out the gate, Defendant's argument meets an insurmountable obstacle–the police activity here was not objectively coercive. From his arrest through his interview, officers treated Defendant with respect. They did not yell, they did not threaten him, they did not deceive him. And during the interview, Powell and Robinson were unarmed. Their discussion with Defendant was calm and cordial, just like Defendant's other interactions with agents that day. And the Court does not credit Defendant's testimony that the officers withheld medical treatment to elicit his waiver of his rights. Put simply, "the record is devoid of any suggestion that police resorted

11

to physical or psychological pressure" to elicit the waiver. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986).[3]

In response, Defendant urges that his physical condition made his waiver involuntary. But the focus here is on the conduct of the officers. *See Connelly*, 479 U.S. at 170 ("The sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion."). The voluntariness inquiry "is not concerned 'with moral and psychological pressures emanating from sources other than official coercion.'" *Id.*, quoting *Oregon v. Elstad*, 470 U.S. 298, 305 (1985). In other words, absent objective coercion, the voluntariness inquiry is at an end. *See id.* (rejecting the defendant's argument that, even without objective coercion, his confession was involuntary due to "coercion flowing from the 'voice of God.'"); *United States v. Newman*, 889 F.2d 88, 94 (6th Cir. 1989) ("Evidence that a defendant suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process; some element of police coercion is always necessary."). Thus, because there was no coercive police activity, the Court concludes that Defendant voluntarily waived his Miranda rights.

### b. Defendant Gave Valid Consent to Search his Phone

As for Defendant's consent to search his phone, the "Fourth Amendment permits a search without a warrant if valid consent to search is given." *United States v. Lucas*, 640 F.3d 168, 174

---

[3] At most, there is only one possible hint of coercive police activity–Officer Powell's alleged statement to Defendant saying, "DEA, you're fucked." But even if this single statement can be considered objectively coercive, the "totality of the circumstances" show that it was not sufficient to overbear Defendant's will. *See Mahan*, 190 F.3d at 422. This isolated statement occurred many hours before Defendant waived his rights and was too far attenuated to have any effect on that decision, especially in the absence of any other indication of coercive police activity.

(6th Cir. 2011). The Government must show that consent was voluntary, unequivocal, specific, intelligently given, and not influenced by duress or coercion. *Id.* Factors to consider include: age, intelligence, education, whether Defendant understood the right to refuse consent, the length and nature of detention, any use of coercive or punishing conduct by police, and any indications of subtler forms of coercion. *Id.*

Like his Miranda waiver, Defendant voluntarily gave officers consent to search his phone. Again, the officers did not use any coercive tactics, either before or during the interview. They were unarmed and never threatened Defendant. They also carefully explained his rights–rights that Defendant was well-familiar with, having previously signed consent to search forms on other occasions. And, as testimony and medical records confirm, Defendant was physically and psychologically capable of understanding those rights. All of these circumstances show that Defendant's consent was freely and unequivocally given.[4]

### CONCLUSION AND ORDER

For the reasons above, IT IS ORDERED that Defendant's Motion to Suppress is DENIED.

IT IS SO ORDERED.

                                          s/Sean F. Cox
                                          Sean F. Cox
                                          United States District Judge

Dated: August 31, 2018

---

[4] Defendant conceded at the hearing that he does not argue that his waiver and his consent were unknowing. Nor could this argument prevail. Defendant was very familiar with these particular constitutional rights. The officers also carefully explained these rights to Defendant before he signed the Miranda waiver and the consent to search forms. In short, the totality of the circumstances show that Defendant's decision in both instances was made with full knowledge of his rights.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                           Case No. 18-20075

Adam Dean Brown,

                                          Sean F. Cox
    Defendant.                    United States District Court Judge

_____/

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 31, 2018, by electronic and/or ordinary mail.

                                                s/Jennifer McCoy
                                                Case Manager